**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 29, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP108-CR**

Cir. Ct. No. **2018CM1454**

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

RICHARD BRIAN LOPEZ,

  DEFENDANT-APPELLANT.

  APPEAL from a judgment of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed*.

¶1   DUGAN, J.[1] Richard Brian Lopez appeals from a judgment of conviction from the circuit court for one count of battery, one count of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

intimidation of a witness, and one count of disorderly conduct, all with the domestic abuse modifier. On appeal, Lopez argues that the circuit court improperly admitted a second set of photographs depicting the bruising on the victim's face that were not disclosed to the defense until the day of trial. This court concludes that any error in the admission of the photographs was harmless. The victim testified at trial regarding the extent of her injuries, the officer who took the photos testified regarding the victim's appearance, and the first set of photographs of the victim's face from the day of the incident were admitted at trial. Accordingly, this court affirms.

## BACKGROUND

¶2 Lopez was charged on April 6, 2018, with one count of misdemeanor battery, one count of intimidation of a witness, and one count of disorderly conduct, all with the domestic abuse modifier, as a result of an incident on April 5, 2018, where he was alleged to have punched his live-in girlfriend, Margaret, with whom he also shared two children.[2] The case proceeded to a jury trial.

¶3 On the day of the trial, the State provided a second set of photographs to the defense depicting bruising on Margaret's face. The photographs had been taken four or five days after the incident alleged in the criminal complaint, and were taken by the same officer who took the first set of photographs on the day of the incident for the purpose of documenting the progression of the bruising on Margaret's face. The defense objected to the

---

[2] This court refers to the victim in this case using a pseudonym. *See* WIS. STAT. RULE 809.19.

State's use of these photographs, because they had not been previously provided, and requested that the photographs be excluded from trial. The State responded that the local police department provided the photographs that morning, and argued that the officer who took the photographs and Margaret would be available for cross-examination about the bruising on Margaret's face. The trial court allowed their use during the trial and said:

> At this point, given the information that I have that the victim is present and the victim can offer testimony with regard to her injuries and how long those injuries lasted, the [c]ourt wanted to see the photos. They do depict bruises, but they're not particularly graphic or they're not something that would—that are pictures of horrific injuries, so I am going to deny the request to exclude them from the evidence. I don't find that the pictures would be unfairly prejudicial, given as long as they're introduced through the victim.

¶4 Margaret subsequently testified at trial regarding the events alleged in the criminal complaint. She testified that on the night of April 5, 2018, Lopez arrived home around 9 p.m. and began asking her where his medication bottle was. Margaret told him she didn't know where it was. She described that Lopez then "began grabbing the collar of [her] shirt demanding [she] tell him where his medication bottles were" and "pushing [her] shoulder." At that time, she was holding their nine-week-old daughter, so Margaret put her daughter down on the couch and "then [she] pushed him to move him away from [her]." She testified that was "when he turned around, closed fist, punched [her] in [her] eye, [her] left eye" and "then he punched [her] again in [her] left upper lip."

¶5 Margaret further testified that after Lopez hit her, "[she] grabbed her cell phone, and [she] walked toward [her] front door, and [she] was going to call the police." Lopez followed her and tried to take her cell phone, but Margaret "shove[d] him off from the back of [her]" and Lopez fell and knocked a picture off

the wall. Margaret went to the front door to go outside and call the police, and Lopez went upstairs. Margaret described that Lopez stood at the top of the stairs "saying he didn't do anything, and that this was self-defense." He then threatened to kill Margaret, and "[h]e was making a hand gesture like cutting [her] throat." During her testimony, Margaret also identified the first set of pictures taken by the police of her face from the night of the incident and the second set of pictures taken of her face on April 9, 2018. The photographs were shown to the jury.

¶6      The officer who responded to the scene testified at the trial. He described that, when he entered the house, he found picture frames on the ground and broken glass. He also described that Margaret's face appeared "puffy" and he "noticed on the left side of her face where she was possibly struck" where "some black and blue [was] starting to form just underneath her left eye." He also testified that he took pictures of Margaret's face on the night of the incident and then followed up with Margaret on April 9th to determine if her injuries had worsened, and took more pictures at that time.

¶7      Lopez argued at trial that he hit Margaret in self-defense. To that end, Margaret was cross-examined regarding the nature of the conversation that led up to the incident she described and how she pushed him. Another officer who responded to the scene and talked with Lopez also testified that he did not see any signs of injury on Lopez. Lopez did not testify at trial.

¶8      Lopez was convicted as charged and now appeals his judgment of conviction. On appeal, he argues that the trial court erroneously admitted the second set of photographs taken on April 9, 2018. In particular, he argues that the State failed to comply with WIS. STAT. § 971.23 and, therefore, the photographs

4

should have been excluded. He further argues that the admission of the photographs was unfairly prejudicial.

## DISCUSSION

¶9 As relevant here, pursuant to WIS. STAT. § 971.23(1), the district attorney shall

> [u]pon demand [and] within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the [S]tate:
>
> ….
>
> (g) Any physical evidence that the district attorney intends to offer in evidence at the trial.

As a sanction for a failure to comply with § 971.23(1), the court "shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply." Sec. 971.23(7m)(a). Additionally, "[t]he court may in appropriate cases grant the opposing party a recess or a continuance." *Id.* Further, the statute provides that "[i]n addition to or in lieu of any sanction specified in par. (a), a court may … advise the jury of any failure or refusal to disclose" by the State or the defendant.[3] Sec. 971.23(7m)(b).

---

[3] Lopez's argument is limited to whether the trial court should have excluded the second set of photographs, and he does not assert that the trial court should have imposed a sanction or any other remedy for the State's failure to disclose the second set of photographs. Thus, this court does not address the alternatives to exclusion provided in the statute. Nevertheless, this court recognizes that a trial court's failure to exercise its discretion to use these alternative remedies is similarly subject to a harmless error analysis. *See State v. Harris*, 2008 WI 15, ¶¶107-08, 307 Wis. 2d 555, 745 N.W.2d 397.

¶10    Alleged violations of WIS. STAT. § 971.23 are analyzed in three steps.  First, this court decides "whether the State failed to disclose information it was required to disclose under WIS. STAT. § 971.23(1)."  **State v. Rice**, 2008 WI App 10, ¶14, 307 Wis. 2d 335, 743 N.W.2d 517.  Second, this court decides "whether the State had good cause for any failure to disclose under § 971.23(1)."  **Id.**  Third, "if evidence should have been excluded under the first two steps, [this court] decide[s] whether admission of the evidence was harmless."  **Id.**

¶11    The State concedes that the second set of photographs was required to be disclosed under WIS. STAT. § 971.23(1), and it does not have good cause for its failure to disclose the photographs.[4]  Nevertheless, the State argues that any error in the admission of the photographs was harmless.  Therefore, this court addresses the third step in the analysis.  Whether the admission of the photographs was harmless is a question of law this court reviews *de novo*.  *See* **Rice**, 307 Wis. 2d 335, ¶14.

¶12    "When evidence that should have been excluded under [WIS. STAT. §] 971.23 is not excluded, the defendant is not automatically entitled to a new trial."  **State v. DeLao**, 2002 WI 49, ¶60, 252 Wis. 2d 289, 643 N.W.2d 480.  "If the defendant is to receive a new trial, the improper admission of the evidence

---

[4] Lopez argues that the State had a continuing obligation to disclose evidence under local rules, even if there was no such obligation under the discovery statute.  The State concedes that it had a continuing obligation under the discovery statute as a result of a "standing discovery demand between the Milwaukee County District Attorney's Office and the Office of the State Public Defender."  Thus, this court does not address the source of the State's continuing obligation to disclose evidence to the defense.

must be prejudicial."[5] *Id.* This court reviews "the totality of the circumstances to determine harmless error." *State v. Harris*, 2008 WI 15, ¶48, 307 Wis. 2d 555, 745 N.W.2d 397. Thus, in light of the other evidence introduced at trial and the nature of the photographs, this court concludes that there was nothing prejudicial about the admission of the second set of photographs and, thus, any error in their admission was harmless.

¶13 At trial, Margaret testified and described that Lopez punched her twice in the face. The responding officer who took both sets of pictures also testified that Margaret's face appeared "puffy" with "black and blue … starting to form" on the night of the incident. The State also introduced into evidence the first set of photographs taken on the night of the incident that also showed bruising forming on Margaret's face.

¶14 In light of this evidence, this court concludes that any error in the admission of the second set of photographs was harmless. *See State v. Lock*, 2012 WI App 99, ¶123, 344 Wis. 2d 166, 823 N.W.2d 378. The second set of photographs did not provide the jury with any information it had not already heard. The second set of photographs also did not provide that information in any more vivid of a picture than was already painted for the jury. As the trial court recognized when it addressed the photographs, Margaret was available to provide

---

[5] Our supreme court has recognized that the test to be applied here has been stated in several ways. *See Harris*, 307 Wis. 2d 555, ¶¶42-43. First, "the error is harmless if the beneficiary of the error proves, 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.*, ¶42 (citation omitted). Second, "the standard is whether the State's nondisclosure of the evidence sufficiently undermines the court's confidence in the outcome." *Id.* Third, the "test for harmless error asks whether it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.*, ¶43 (citation omitted). This court concludes that, under any formulation of the test, the admission of the second set of photographs was not prejudicial and therefore harmless.

7

testimony at trial to describe the two punches she received, the injuries that resulted, and how long those injuries lasted. Furthermore, while the photographs "do depict bruises, but they're not particularly graphic or they're not something that would—that are pictures of horrific injuries." Indeed, they are not significantly different from the first set of photographs taken on the night of the incident, admitted into evidence, and shown to the jury.[6]

¶15    Moreover, the second set of photographs did not alter Lopez's defense at trial in which he admitted to hitting Margaret and argued that he hit her in self-defense after she attacked him. In other words, this is not a case where the State's discovery violation "went to the core of [his] trial preparation and strategy" such that a new trial is required. *See DeLao*, 252 Wis. 2d 289, ¶61; *see also Harris*, 307 Wis. 2d 555, ¶¶46-48. "The penalty for the breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant." *DeLao*, 252 Wis. 2d 289, ¶60 (citation omitted). This court concludes that, beyond a reasonable doubt, the admission of the second set of photographs did not contribute to the verdict. *See Harris*, 307 Wis. 2d 555, ¶42 ("[T]he error is harmless if the beneficiary of the error proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (citation omitted)).

¶16    In sum, this court concludes that there was nothing prejudicial about the admission of the second set of photographs and thus, any error in their admission was harmless. Accordingly, this court affirms.

---

[6] Additionally, for these reasons, this court also rejects Lopez's assertion that the photographs should have been excluded as being unfairly prejudicial for arousing the jury's sense of horror and instinct to punish Lopez.

8

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.